Anastasios Touloupas, Appellant, v. The Equitable Life Assurance Society of the United States, Appellee.

Gen. No. 38,715.

Opinion filed June 22, 1936. Rehearing denied July 6, 1936.

Coco & Morse and Louis G. Davidson, both of Chicago, for appellant.

Mayer, Meyer, Austrian & Platt, of Chicago, for appellee; Frank D. Mayer and Miles G. Seeley, of Chicago, of counsel.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from an order and judgment entered in the superior court after directing a verdict in favor of the defendant at the conclusion of plaintiff's testimony.

On June 7, 1933, plaintiff, Anastasios Touloupas, brought an action of trespass on the case on promises to recover payments allegedly due him under the total disability clause contained in a life insurance policy issued to him by defendant.

The declaration consisted of two counts, the first of which alleges the issuance of the policy on December 30, 1920, and the consideration paid therefor by plaintiff; sets forth the policy in full, including the clause providing that if the insured becomes physically or mentally incapacitated so as to be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, the society will waive payment of any premiums

and will pay the insured $1,200 a year in monthly instalments; that on August 20, 1932, while the policy was in full force and effect plaintiff became and continued to be totally and permanently disabled by telangiectasis of the veins; that he was unable to perform any work for compensation, gain or profit; that on September 28, 1932, due proof of plaintiff's disability was furnished to the defendant; that plaintiff is entitled to the sum of $100 per month during the continuance of his disability; that $900 was due plaintiff at the time he brought suit; that defendant had refused to make any payments and that plaintiff is damaged in the sum of $900.

The second count of the declaration makes the same allegations as count one and further alleges that three quarterly premiums amounting to $77.20 each became due under the terms of said policy after the onset of said disability and prior to the date of bringing suit; that under the terms of the policy, payment of all premiums is to be waived by the defendant after receipt of proof thereof and during the continuance of the disability; that defendant after receiving said proof of disability, failed and refused to waive payment of said premiums and the plaintiff was wrongfully compelled to pay said premiums to defendant; that defendant has refused to return said premiums to the plaintiff, to the damage of plaintiff in the sum of $231.60.

Defendant filed an affidavit of merits to both counts stating that plaintiff did not become and was not totally and permanently disabled on and after August 20, 1932, or at any time subsequent to the issuance of the policy. By leave of court the defendant filed an additional affidavit of merits during the trial, in which it was alleged that plaintiff did not furnish to defendant due proof of disability within six months prior to the commencement of suit; that the premiums which

were paid by plaintiff to defendant after the commencement of the alleged disability were paid voluntarily and cannot be recovered.

The evidence shows that plaintiff, a man 48 years of age at the time of the trial, was born in Greece; that he lived and worked on a farm until he was 18 years old, when he came to live in the United States; that he made Chicago Heights and Chicago his home until the date of the trial; that he received very little education while in Greece and could neither read nor write the English language very well; that he worked as a waiter all his life and was part owner and manager of a restaurant at one time; that his duties as a waiter required him to be on his feet and he performed such other duties as are required in a restaurant which also kept him on his feet; that on December 30, 1920, he took out a life insurance policy for $10,000 with the defendant which contained a disability clause upon which the present claim is based.

The evidence further shows that the disability clause contained in said policy provides:

"If the insured before attaining the age sixty, provided all premiums have been duly paid and this policy is then in full force and effect, becomes physically or mentally incapacitated to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, and furnishes due proof thereof and that such disability has then existed for sixty days, the Society, during the continuance of such disability, will waive payment of any premium payable upon this policy after receipt of such proof, and will pay to the Insured an income of Twelve Hundred Dollars a year payable in monthly instalments, (subject to the following conditions:)

"1. The income shall be payable six months after receipt of proof of disability and monthly thereafter

during the continuance of such total and permanent disability. . . . The premiums so waived and the Disability Income so paid shall not be deducted from the amount payable at death; nor shall they impair the loan or surrender values, if any, under this policy.

"2. The Society, after the acceptance of proof of disability, shall have the right at any time, but not more frequently than once a year, to require proof of the continuance of such total disability. If the Insured shall fail to furnish satisfactory proof thereof, or if it appears at any time that the Insured has become able to engage in any occupation for remuneration or profit, no further premiums will be waived and no further income payments will be made hereunder on account of such disability.

"3. The entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, will of themselves be considered as total and permanent disability within the meaning of this provision. . . . "

The evidence further shows that plaintiff worked steadily at his employment until 1931; that his right leg began to bother him about seven or eight years before the trial during which time it became more swollen and progressively painful; that during the last eight or ten months preceding January, 1932, he was able to do hardly any work at all; that from January, 1932, until August 20, 1932, the date of the commencement of the disability for which compensation is claimed, he did very little work; that he worked two nights in a restaurant and the relief organization gave him work one week in every month from May until August, 1932; that during this period his leg grew steadily worse; that on August 20, 1932, the last day that he worked, his pain was quite severe and he fainted on the way home.

The evidence further shows that after plaintiff arrived home he was taken to Dr. Joannides, who directed him to stay at home, to rest and to stay off his feet; that a physical examination of Anastasios Touloupas on that date revealed a dilation of the veins of the right leg in the popliteal space behind the knee and extending down to the ankle; that the protuberances were equally dilated; that he did not work again at any time prior to the trial.

The evidence further shows that Dr. Schowalter who examined plaintiff on January 31, 1933, and Dr. Greenspahn who examined him on February 23, 1933, both prescribed bed rest.

The evidence further shows that plaintiff was unable to be up and about without endangering his life; that after August 20, 1932, he spent practically all his time at home, either in bed or in a chair; that he uses a cane to get about and he cannot get around without it; that he makes only occasional trips to the grocery or drug store nearby; that he went down to see Dr. Joannides about once a month, from August 20, 1932, until November, 1934; that Dr. Joannides treated the plaintiff off and on but could do nothing for him; that the varicosities were steadily getting larger, more tense and expanded; that plaintiff complained of constant pain and was unable to walk because of pain causing stiffness in his leg; that his leg swells when he sits or stands for a while and the pain gets worse; that it relieves the pain somewhat when he lies down; that walking around makes the pain worse; that the pain is very sharp and he feels it all the time; that the doctors all agreed that the leg had become progressively worse since the onset of the disability up to the time of the trial.

The evidence further shows that on September 28, 1932, plaintiff notified the defendant in writing of his disability on a blank furnished by the company giving

the nature of his disease, the date on which he became totally disabled, the nature of his employment and that he could not do any work. He also gave the name and address of the physician who was attending him and a history of previous attacks of his illness and stated that he carried no other insurance.

Subsequently, on December 22, 1932, another statement of the same general character relative to plaintiff's condition was furnished to defendant, which also included a statement of the attending physician.

The evidence further shows that on January 14, 1933, the defendant notified the plaintiff by letter that it declined plaintiff's claim for disability benefits on the ground that a condition of total and permanent disability was not proved; the evidence further shows that plaintiff paid the premiums that became due after August 20, 1932, until the date suit was brought which was on June 7, 1933.

It is the contention of the defendant that plaintiff's proof did not show that plaintiff was totally and permanently disabled according to the terms of the policy, and, secondly, that the commencement of the suit was premature because the six months had not expired from the date of the filing of the proof.

The plaintiff testified that his leg was very swollen and painful; that he last worked in January, 1932; that his leg first began to bother him about 7 or 8 years ago and that it gradually got worse; that on August 20, 1932, he attempted to work for the Lincoln Park Commissioners picking up papers; that the pains were very bad and he started to go home and fainted on the way; that he was driven to Dr. Joannides' office and the doctor told him he should not do any work and that he should not stand on his feet; that from August 20, 1932 until June, 1933, his leg was getting a little worse and the pains were getting stronger.

Two doctors produced by the plaintiff stated that they had attended him and that plaintiff was unable to

walk because of the pain causing a stiffness in the leg; that there was a progressive change in the varicosities and they were gradually getting larger. An objection by defendant prevented Dr. Joannides from telling whether or not an operation would free plaintiff from the pains and the disability which he now suffers.

The plaintiff alleges that proof of disability was furnished to defendant on September 28, 1932. The affidavit of defense does not deny this allegation, but simply denies that proof was furnished six months prior to the commencement of the suit. If the question were asked, as to what is meant by due proof, there would probably be as many different definitions submitted as there were persons attempting to define it. When, on September 28, 1932, plaintiff furnished defendant with the statement heretofore referred to, which was received by the defendant without objection, it was proof at least of the nature of plaintiff's illness, the time when it commenced and that it was presumably a permanent disability, the name of the doctor, etc. Whether or not the proof of disability was satisfactory as furnished on September 28, 1932, or what the defendant considered as due proof, does not appear in this record.

As was said in the case of *Sargent v. Prudential Ins. Co. of America,* 283 Ill. App. 640 (Abst.), Mr. Presiding Justice McSurely, speaking for the court, said:

"The argument of the defendant assumes that plaintiff's application for benefits must contain proofs to the satisfaction of the insurance company that he was permanently disabled, whereas it is more reasonable to hold that the fact of disability itself is the determining factor rather than the validity of the proof contained in the application. The same argument that is here advanced by defendant was made and considered in *Forman v. New York Life Ins. Co.,* 267 Mich. 426, where the court very aptly said:

" 'Defendant's principal contention is that "due proof" of total disability was not submitted to defendant. It is argued that it is not the fact of disability but the showing to the company which brings the clause into operation.

" 'Of course the policy cannot fairly be construed to constitute defendant the sole judge of disability nor to mean that the fact of permanent disability is foreclosed in favor of or against either party by the proof made to the company by the insured. Actionable disability ultimately is a question of fact for trial. "Due proof" can mean no more than that reasonable evidence of disability within the terms of the policy shall be submitted to the company. Where such evidence is submitted in a good faith attempt to comply with the provisions of the policy the company should point out particularly any defects therein if it intends to rely upon them.' "

In the case at bar we think the statement furnished to the defendant on September 28, 1933, should have been considered a good faith attempt on the part of the plaintiff to furnish to the defendant all the information he possessed at that time as to the nature of his disability and as a claim, under the terms of the policy, because of such disability. When the letter of January 14, 1933, declined to point out wherein any of the proof furnished was insufficient, we think the six-months' provision, as to the time required to elapse before suit could be commenced, should properly date from September 28, 1932, and, therefore, the commencement of the suit on June 7, 1933, was in compliance with the requirements of the policy.

We next come to the question as to whether or not, under the terms of the policy, plaintiff was permanently disabled. Plaintiff's evidence and the evidence of the doctors who attended him show that it

was impossible for him to do the work in which he had been engaged. But, whether he was permanently disabled or not, was a question which should have been submitted to a jury.

In the case of *Zorger v. Prudential Ins. Co.,* 282 Ill. App. 444, which was a suit to recover on an insurance policy, because of permanent disability, Mr. Justice Hebel, speaking for this court, said:

"The question in this case is largely one of fact. From an examination of the record we find that a number of physicians were called as witnesses and testified as to the condition of the plaintiff, which testimony was based not only upon a physical examination, but also upon their answers to hypothetical questions. The evidence of the plaintiff clearly establishes the fact of his illness, and tends to show that he is suffering from exophthalmic goiter and a bad heart condition, and while there is some dispute as to plaintiff's ability to engage in a gainful occupation, still it appears from all the evidence that the plaintiff is suffering from a physical disability. As to whether he is totally and permanently disabled was a question for the jury, and we are unable to say from this record that the verdict arrived at by the jury is against the manifest weight of the evidence.

On a motion for a directed verdict plaintiff is entitled to the benefit of all the facts that the evidence tends to prove. As the Supreme Court said in *Pollard v. Broadway Cent. Hotel Corp.,* 353 Ill. 312, at page 319: "In the examination of the case she is entitled to the benefit of all the facts that the evidence tends to prove and all just inferences that can be drawn therefrom, and the evidence most favorable to her must be taken as true."

And again in *Brownlie v. Brownlie,* 351 Ill. 72, at page 78, it was said: "The party resisting the motion is entitled to the benefit of all the evidence, considered in its aspect most favorable to him, together with all

reasonable presumptions to be drawn therefrom. The motion raises the question whether there is any evidence fairly tending to prove the allegations of the bill. Where there is such evidence, although it may be opposed by the greater weight of the countervailing testimony, the case should be submitted to the jury.''

In the instant case from a review of the record we are satisfied that there was sufficient evidence which, if true, and in the absence of countervailing testimony, would entitle the plaintiff to have the cause submitted to a jury and the action of the trial court in granting the motion to instruct the jury at the close of plaintiff's evidence was error.

For the reasons herein given the judgment of the superior court is hereby reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HALL, P. J., and HEBEL, J., concur.